IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action Nos. 18-cv-02915-LTB
             18-cv-02922-LTB

IN RE:

DVR, LLC and
UTE LAKE RANCH, INC.,

    Debtors.
_____

BRUCE HAMON,

    Appellant,

v.

DVR, LLC,
JOLI A. LOFSTEDT - TRUSTEE FOR DEBTOR'S ESTATE,
UTE LAKE RANCH, INC., and
JANICE STEINLE - TRUSTEE FOR DEBTOR'S ESTATE,

    Appellees.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

Appellant Bruce Hamon ("Hamon") appeals the United States Bankruptcy Court for the District of Colorado's (the "Bankruptcy Court") Order Allowing Settlement Hearing to Proceed dated March 26, 2018 [Doc # 1, Ex. 1] and Order Approving Settlement Agreement dated October 26, 2018 [Doc # 1, Ex. 2]. Oral argument would not materially assist in the determination of this appeal. After full

1

consideration of the record and the parties' briefs, I affirm the orders of the Bankruptcy Court.

## I. Jurisdiction

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from "final judgments, orders and decrees" of the Bankruptcy Court. There is no dispute that the orders that are the subject of this appeal are final and that this Court has jurisdiction over this appeal.

## II. Background

The approved settlement at issue in this appeal was entered into by the Trustees for DVR, LLC ("DVR") and Ute Lake Ranch, Inc. ("ULR") (collectively "Debtors") and non-party New Lake, LLC ("New Lake"). Barry Freedman ("Freedman") formed Debtors for the purpose of owning and developing land in New Mexico. Freedman is a majority member and shareholder of Debtors, and Hamon is a minority member and shareholder of Debtors. New Lake is another entity formed by Freedman.

In 2006, DVR, Hamon, and Freedman, as co-borrowers, borrowed $2.5 million from First National Bank of New Mexico ("FNB"). The FNB loan was evidenced ny a promissory note (the "FNB Note") and secured by mortgages (the "FNB Mortgages") on real property owned by Debtors (the "Property").

After disputes arose between Freedman and Hamon, multiple lawsuits were filed involving Freedman, Hamon, and other related parties. In particular, Hamon and another minority owner of Debtors, filed *Hamon v. ULR,* Case No. 2009CV2340

2

in the District Court for Arapahoe County, Colorado (the "State Court Case") wherein they asserted claims for breach of fiduciary duty and fraudulent concealment against Freedman and requested dissolution of Debtors or the appointment of a receiver.

While the State Court Case was pending, DVR defaulted on the FNB Note after Hamon failed to execute a change in terms agreement negotiated by Freedman. Freedman formed New Lake and through it purchased the FNB Note and the FNB Mortgages.

On November 29, 2012, following a trial, the Arapahoe County District Court (the "State Court") issued its Findings of Fact, Conclusions of Law, and Order (the "Post-Trial Order") in the State Court Case. In the Post-Trial Order, the State Court found that Freedman breached his fiduciary duties as manger of DVR by self-dealing with respect to the FNB Note and through mismanagement but that the plaintiffs had not proven that they suffered any resulting damages. The State Court reserved ruling on the plaintiffs' request for judicial dissolution of Debtors but appointed a receiver for them (the "Receiver").

Freedman appealed the Post-Trial Order. Hamon moved to dismiss the appeal on the basis that it was untimely due to important matters still pending before the State Court. The Colorado Court of Appeals agreed and dismissed Freedman's appeal. Freedman then filed a motion for clarification or, alternatively, for certification of final judgment pursuant to Colo. R. Civ. P,. 54(b). The State Court denied Freedman's motion.

3

On October 24, 2013, the State Court entered an Order Imposing Constructive Trust (the "CTO") on the FNB Note and FNB Mortgages as requested by the Receiver. In the CTO, the State Court found that New Lake was the alter ego of Freedman and further ordered that the money paid by Freedman to purchase the FNB Note would be deemed a capital contribution to DVR; that the FNB Mortgages were extinguished; and that Freedman or, should Freedman fail to do so, the Receiver execute written releases of the FNB Mortgages. The Receiver ultimately filed releases of the FNB Mortgages.

Freedman filed a second appeal aimed at the CTO. Hamon again moved to dismiss Freedman's appeal on the basis that it was untimely since there was still no final judgment in the State Court Case. The Colorado Court of Appeals agreed and dismissed Freedman's appeal of the CTO.

Pursuant to the orders of the State Court, the Receiver attempted to sell the Debtors' Property. To thwart the Receiver's efforts, Freedman and New Lake filed a notice of lis pendens against the Property. The State Court ordered Freedman to release the notice of lis pendens but he failed to do so and instead filed a second notice of lis pendens against the Property. On August 11, 2016, the State Court held New Lake in indirect punitive contempt and imposed a fine of $50,000. On August 15, 2016, the State Court held Freedman in indirect punitive contempt in four separate instances and sentenced him to 1 week of imprisonment for each instance for a total sentence of 4 weeks imprisonment.

Ultimately, the Receiver was unable to sell the Debtors' Property and filed

bankruptcy petitions for both Debtors. On January 24, 2017, New Lake filed a secured proof of claim in the Debtors' bankruptcy cases in the amount of $2,529,713.24 (the "New Lake Claim") representing the balance owing on the FNB Note. New Lake also filed a notice of appeal from the August 11, 2016 indirect punitive contempt finding against it. This appeal was stayed as a result of the bankruptcy filings.

A total of forty-nine creditors filed claims in the DVR bankruptcy case, and a total of forty-four creditors filed claims in the ULR bankruptcy case. The unsecured claims asserted in the DVR bankruptcy case total $16,477,716.23.

On June 13, 2017, in reliance on the CTO, Hamon commenced an adversary proceeding (the "Adversary Proceeding") against New Lake and Freedman objecting to the New Lake Claim pursuant to 11 U.S.C. § 502 and seeking to equitably subordinate the New Lake Claim to the claims of every other unsecured creditor pursuant to 11 U.S.C. § 510(c) and to re-characterize it from a debt claim to an equity claim. Shortly thereafter, with the approval of the Bankruptcy Court, trustees for the Debtors in the bankruptcy cases (the "Trustees") sold the Property for a purchase price of $4.75 million. After all undisputed liens and encumbrances on the Property were paid, there remained $1,764,443.20 in proceeds from the sale of the Property.

The Trustees then negotiated a settlement with New Lake whereby New Lake would be granted a secured claim against DVR in the amount of $1.3 million to be paid from the proceeds from the sale of the Property. In exchange, New Lake

would release any liens against the Property and waive its right to challenge the CTO for purposes of bringing a claim against the Debtors. On September 26, 2017, the Trustees filed a motion seeking approval of their settlement with New Lake (the "Settlement Motion") pursuant to Fed. R. Bankr. P. 9019. Hamon filed an objection to the Settlement Motion.

In connection with the Settlement Motion, the Bankruptcy Court first took the legal issue of "whether the statutory right of a party to object to a creditor's claim conferred by § 502(a) trumps a trustee's right to settle that same claim under Rule 9019." In its Order Allowing Settlement Hearing to Proceed, the Bankruptcy Court concluded that it could proceed with an evidentiary hearing and rule on the Trustees' proposed settlement even though it had not yet ruled on the merits of Hamon's claims in the Adversary Proceeding. Then, after a two day evidentiary hearing on the Settlement Motion, the Bankruptcy Court entered its Order Approving Settlement Agreement.

On appeal, Hamon argues that the Bankruptcy Court erred (1) in ruling that it could approve the Trustees' settlement with New Lake under Rule 9019 without first resolving Hamon's objections to the New Lake Claim in the Adversary Proceeding; and (2) by approving the Trustees' settlement with New Lake. Hamon therefore challenges both the Order Allowing Settlement Hearing to Proceed and the Order Approving Settlement Agreement.

### III. Standard of Review

In reviewing the Bankruptcy Court's decisions, I apply the same standards of

review that govern appellate review in other cases. *Sender v. Buchanan (In re Hedged - Invs. Assocs., Inc.),* 84 F.3d 1286, 1288 (10th Cir.1996). Therefore, I review the Bankruptcy Court's legal conclusions de novo and its factual findings for clear error. *Id.* (*citing Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir. 1994)). Additionally, the Bankruptcy Court's approval of the settlement may be reversed "only [if] it achieves an unjust result amounting to a clear abuse of discretion." *Reiss v. Hagmann,* 881 F.2d 890, 891–92 (10th Cir. 1989) (citation omitted).

## IV. Analysis

### A. The Bankruptcy Court's Analysis of § 502 and Rule 9019 in the Order Allowing Settlement Hearing to Proceed

Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." If a party in interest objects, § 502(b) provides that the court, after notice and a hearing, "shall" determine the amount of the claim and "shall" allow it in the determined amount. Under Rule 9019, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Because a trustee's power to settle is set forth in a procedural rule while the right to have a claim objection ruled on is established by statute, any conflict between the two must be resolved in favor of § 502. *United States v. Towers (In re Pac Atl. Trading Co.),* 33 F.3d 1064, 1066 (9th Cir. 1994). *See also* 28 U.S.C. § 2075 (bankruptcy procedural rules "shall not abridge, enlarge, or modify any substantive right").

7

The specific question addressed by the Bankruptcy Court in the Order Allowing Settlement Hearing to Proceed was "whether the statutory right of a party to object to a creditor's claim conferred by § 502(a) trumps a trustee's right to settle that same claim under Rule 9019." The Bankruptcy Court concluded that although the use of the word "shall" in § 502(b) imposed a duty on it to determine the amount of a claim after an objection is filed, this duty may be discharged in the context of a settlement under Rule 9019 so long as the settlement does not compromise the rights of non-debtor third parties without their consent. The Bankruptcy Court recognized that other courts had imposed restrictions on standing to bring claim objections but found that the better solution was to "allow the objector to bring his objection, airing any legitimate grounds for doubting the claim's validity, but then to allow the trustee to come along and settle the dispute when doing so is in the best interests of the estate."

Turning to the case before it, the Bankruptcy Court found it a "perfect illustration" of how § 502(a) and Rule 9019 work harmoniously together rather than conflict. The Bankruptcy Court found that Hamon played an important role in objecting to New Lake's claim by bringing the CTO to the Trustees' attention so that it was considered in their negotiation and settlement with New Lake. The Bankruptcy Court further found that the proposed settlement only compromised New Lake's right to recover from the proceeds from the sale of the Property and not any individual claim of Hamon's and that Hamon would still have his day in court because his objection to the New Lake claim would have to be ruled on before the

proposed settlement could be approved.

Hamon first argues that the Bankruptcy Court's conclusion that it could proceed with a hearing on the Settlement Motion notwithstanding the pending Adversary Proceeding improperly usurped his right to object to the New Lake Claim under § 502(a). In support of this argument, Hamon relies principally on *In re C.P. Hall, Co.,* 513 B.R 540 (Bankr. N.D. Ill. 2014) and *In re CS Mining, LLC,* 574 B.R. 259 (Bankr. D. Utah 2017).

In *C.P. Hall*, the debtor was a defunct distributor of raw asbestos products whose creditors were comprised of people holding judgments obtained from personal injury lawsuits against it. One such creditor, Shipley, filed adversary complaints against the others seeking a determination that he had a lien on the debtor's insurance proceeds, that the other creditors' liens were invalid, or, to the extent that they were valid, that his lien was superior to theirs. *C.P. Hall,* 513 B.R. at 542. The trustee settled with the other creditors and agreed to allow their claims in full if they relinquished their position that their liens were secured so that these claims would instead be paid as general unsecured claims with no priority status. Shipley opposed the settlement arguing, in part, that the court had no authority to allow the other creditors' claims without first ruling on his objection to them. *Id.* at 543. Initially, based on other case law, the court agreed that it could proceed with a hearing on the Rule 9019 settlement motion but then reversed its position and concluded that § 502(b) entitled Shipley to a ruling on his objection before the hearing on the settlement could proceed. *Id.* at 544-46.

9

In *CS Mining*, there was a pending § 502(a) claim objection based on a breach of an inter-creditor agreement whereby other creditors sought to disallow one secured creditor's claim against the debtor in full on grounds of equitable subordination, re-characterization, and tortious interference. When the debtor requested approval of a settlement with the creditor holding the challenged claim, the court, in reliance on *C.P. Hall*, ruled that the settlement could not be approved because "[w]hen a party files an objection to a claim, their rights to be heard on the claim objection should not be abridged or modified by a settlement." *CS Mining,* 574 B.R. at 281.

The Bankruptcy Court sought to distinguish *C.P. Hall* and *CS Mining* based on the nature of the claim objections involved noting that "[w]hen a claim objection involves the individual rights of the objecting creditor, such as a dispute over competing lien rights, it is intrinsically different from a claim objection that only disputes a creditor's entitlement to a distribution from an estate or its assets." The Bankruptcy Court then determined that Hamon's objection was not based on his individual rights since his equitable subordination claim, unlike that asserted in *CS Mining,* was based on an alleged injury to all creditors and since he no longer had a secured claim competing for priority with that of New Lake.

Although Hamon now argues that his objection to the New Lake Claim was premised on his individual rights as an unsecured creditor and equity holder in Debtors, the Bankruptcy Court's characterization of Hamon's objection accurately reflects the nature of the Adversary Proceeding. *See* Complaint in Adversary

Proceeding ("WHEREFORE, [Hamon] respectfully requests this Court ... disallow the New Lake Claim in its entirety ... [and] equitably subordinate the New Lake Claim to every other claim in the Debtor's bankruptcy..."). Furthermore, it does not appear that the arguments advanced in Hamon's reply brief that he suffered an individualized injury because the notices of lis pendens were purportedly recorded on real property that he personally owned in addition to the Property and because he is a co-maker on the DVR note were made before the Bankruptcy Court, and these arguments are therefore not properly before this Court. *Ecclesiastes 9:10–11-12, Inc. v. LMC Holding Co.,* 497 F.3d 1135, 1141 (10th Cir. 2007) ("[Appellate court] will not consider a new theory advanced for the first time as an appellate issue, even a theory that is related to one that was presented to the [lower court].") I am unpersuaded by these arguments in any event and agree with the Bankruptcy Court that Hamon's objection to the New Lake Claim centered on New Lake's entitlement to the proceeds from the sale of the Property rather than any individual right he personally had to such proceeds.

Notwithstanding the valid distinctions noted by the Bankruptcy Court, *C.P. Hall* and *CS Mining* lend some support to Hamon's position. However, though not cited or relied on by the Bankruptcy Court, other courts have reached the opposite conclusion as recognized in *C.P. Hall* and *C.S. Mining. See e.g. RWNIH-DL 122nd St. LLC v. Furtterman (In re Futterman),* 2019WL 2553614 (Bankr. S.D.N.Y. June 20, 2019); *Law Debenture Trust Co. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.),* 339 B.R. 91 (D. Del. 2006); *In re the Heritage Org.,* 375 B.R. 230

11

(Bankr. N.D. Tex. 2007). In *Heritage*, the court concluded that the notice and hearing requirement of Rule 9019 satisfied the right to be heard on a claim objection. Similarly here, the Bankruptcy Court concluded that it could discharge its duty under § 502(b) to consider the issues raised concerning New Lake's Claim in the context of approving the Trustees' settlement with New Lake.

*Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.),* 592 B.R. 798 (Bankr. M.D.Pa. 2018) does not dictate a different analysis. There, the court addressed the issue of who has standing to object to claims under § 502(a) and concluded, just as the Bankruptcy Court here did, that the plain language of the statute mandated that every creditor had an unqualified right to object and that it was improper to rely on legislative intent and policy considerations to limit that right to objections approved by the trustee. In interpreting § 502(b), the Bankruptcy Court did not ignore the statute's plain mandatory language but rather applied it in a way that allowed for it to be reasonably reconciled with Rule 9019 and the other provisions in the Bankruptcy Code that give a pivotal role to the trustee.

Much of the Trustees' argument in opposition to Hamon's entitlement to a ruling on his claims in the Adversary Proceeding under § 502(b) prior to approval of their settlement with New Lake contests Hamon's standing to bring those claims. The Bankruptcy Court's decision was not predicated on any lack of standing by Hamon and is supportable on the grounds it articulated as well as other legal authority. I therefore decline to consider these alternative bases for upholding the

Bankruptcy Court's decision that it could proceed with a hearing on the settlement motion notwithstanding the pending Adversary Proceeding.

Hamon also argues that Part VII of Federal Rules of Bankruptcy Procedure likewise dictates that the Adversary Proceeding cannot be resolved through a settlement under Rule 9019 because there is nothing these rules that would allow for such a result. Again, it does not appear that this argument was made before the Bankruptcy Court, and this argument is therefore not properly before this Court. *Ecclesiastes*, *supra*. In any event, I am not persuaded that the procedural rules in Part VII preclude settlement under Rule 9019 when there is a pending adversary proceeding brought by a third party to challenge the claim of the settling creditor.

In sum then, I conclude that the Bankruptcy Court did not err in ruling that it could approve the Trustees' settlement with New Lake under Rule 9019 without first resolving Hamon's objections to the New Lake Claim through the Adversary Proceeding.

## B. The Bankruptcy Court's Approval of the Trustees' Settlement with New Lake

Settlements are favored in bankruptcy. *Korngold v. Loyd (In re S. Med. Arts Cos., Inc.),* 343 B.R. 250, 255 (10th Cir. B.A.P. 2006). While subject to an abuse of discretion standard, a bankruptcy court's decision to approve a settlement "must be an informed one based upon an objective evaluation of developed facts." *Reiss,* 881 F.2d at 892 (10th Cir. 1989) (citation omitted). "[T]he court should, without conducting a trial or deciding the numerous questions of law and fact, review the issues and determine whether the settlement falls below the lowest point in the

range of reasonableness." *Rich Dad Operating Co.v. Zubrod (In re Rich Global, LLC),* 652 F. Appx. 625, 631 (10th Cir. 2016) (*quoting* 8 Norton Bankruptcy Law & Practice § 167.2). A bankruptcy court's overall objective is "to determine whether the settlement is fair and equitable and in the best interests of the estate." *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 105 B.R. 971, 976-77 (D. Colo. 1989) (citations omitted).

Courts in this Circuit have repeatedly recognized that the following four factors listed in *Kopp v. All Amer. Life Ins. Co. (In re Kopexa Realty Venture Co.),* 213 B.R. 1020 (10th Cir. BAP 1997) are to be considered by a bankruptcy court in its analysis of a proposed settlement agreement: (1) the probable success of the underlying litigation on the merits; (2) possible problems in collecting a judgment; (3) the expense and complexity of the litigation; and (4) the interests of creditors in deference to their reasonable views. *See e.g. Liberty Bank, F.S.B. v. D.J. Christie, Inc.,* 681 Fed. Appx. 664, 668 (10th Cir. 2017); *S. Med. Arts,* 343 B.R. at 256; *In re Dennett,* 449 B.R. 139, 145 (D. Utah 2011); *Official Comm. of Unsecured Creditors of W. Pac. Airlines, Inc. v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.),* 219 B.R. 575, 579 (D. Colo. 1998). Hamon argues that these factors are not an exclusive list and that other considerations may also be relevant to a determination of whether a proposed settlement is fair and equitable. In line with the case law cited above, however, I limit my analysis to the four listed factors just as the Bankruptcy Court did. *See also In re Velasquez,* 2019 WL 2511557 (10th Cir. B.A.P. June 18, 2019) at *5 ("Although there is no controlling circuit law requiring the application

of the *Kopexa* factors on the one hand or precluding consideration of supernumerary factors on the other, we conclude that using the *Kopexa* factors in evaluating Rule 9019 settlements is consistent with the standard stated by the Tenth Circuit in *Rich Global.*").

1. **Probable Success of the Underlying Litigation on the Merits**

This factor requires analysis of whether the CTO is subject to reversal on appeal. There are two prongs to this analysis: (1) whether the CTO may still be appealed; and (2) whether Freedman could successfully overturn the CTO on appeal.

In considering the first prong, the Bankruptcy Court found it "highly likely" that the CTO remains interlocutory and subject to appeal. This finding is consistent with the Colorado Court of Appeals' dismissal of Freedman's earlier appeal of the CTO. Hamon's argument that there is only a "feigned threat" of such an appeal is easily refuted by the fact that Freedman already sought to appeal the CTO, as well as the Post-Trial Order, while New Lake appealed the State Court's contempt finding.

In considering the second prong, the Bankruptcy Court found that there was "substantial risk on both sides" to continued litigation over the CTO and that there were legitimate contested legal issues regarding "the constructive trust, alter ego, and accommodation party issues." In their appellate briefs, both Hamon and the Trustees argue conflicting positions on these legal issues at some length. While these arguments need not be decided or analyzed in detail under the applicable

15

standard for approving settlements under Rule 9019, *Rich Global, supra,* they further support the Bankruptcy Court's finding that there is risk that the CTO would be overturned on appeal in whole or in part. *Compare In re Kay,* 223 B.R. 816 (Bankr. M.D. Fla. 1998) (probable success factor weighed against approval of settlement where trustee quantified the probability of his success on creditor's appeal of final bankruptcy court order that his lien was invalid at 90% and failed to advance any convincing reason why he was not likely to prevail on appeal). Moreover, the Bankruptcy Court reached this conclusion after a two day evidentiary hearing at which one of the Trustees "credibly testified that she and her counselor conducted an extensive review of the state court pleadings and applicable law" before deciding to settle the New Lake Claim. I defer to the Bankruptcy Court's credibility assessment in this regard. *See* Fed. R. Bankr. P. 7052 (making Fed. R. Civ. P. 52(a)(6), which dictates that a reviewing court give due regard to the trial court's opportunity to judge credibility, applicable to adversary proceedings).

I am satisfied that the Bankruptcy Court properly analyzed the risk associated with an appeal of the CTO and find no error in its conclusion that this factor supported approval of the Trustees' settlement with New Lake.

### 2. The Possible Difficulty in Collecting a Judgment

The Bankruptcy Court concluded that this factor was neutral to its analysis of the proposed settlement because the Debtors do not stand to recover any damages from the ongoing dispute over the CTO. On appeal, Hamon does not argue to the contrary so I give no consideration to judgment collection in reviewing the

Bankruptcy Court's approval of the Trustees' settlement with New Lake.

### 3. The Complexity and Expense of the Litigation

Based on the contentious history between the parties, the Bankruptcy Court concluded that ongoing litigation in the State Court Case would likely be costly and lengthy. Hamon argues that this conclusion misses the mark because the only "litigation" at issue is the appeal of the CTO which only requires briefing by the parties which he would pay for in any event. As the Trustees point out, this is an overly simplistic view of how an appeal of the CTO is likely to play out.

Given the history between these parties, it is entirely reasonable to assume that a ruling from the Colorado Court of Appeals would not be the last word on the contested legal issues. At the very least, it should be anticipated that the losing party or parties will seek further review by the Colorado Supreme Court. Further proceedings in the State Court and/or the Bankruptcy Court are also likely to result from a ruling by the Colorado Court of Appeals. Additionally, as recognized by the Bankruptcy Court, the interests of Hamon and Debtors' are not in complete alignment such that the Trustees could reasonably delegate their defense of legal challenges by Freedman and New Lake to Hamon.

I am satisfied that the Bankruptcy Court properly analyzed the complexity and expense associated with challenging the rulings in the CTO and find no error in its conclusion that this factor supported approval of the Trustees' settlement with New Lake.

### 4. The Interests of Creditors in Deference to Their Reasonable Views

The best case scenario for Debtors' other creditors would be for New Lake's claim to be denied in its entirety. This would leave a total of approximately $1.3 million to be paid to Debtors' other creditors for a distribution of approximately 8% of the amount claimed. This amount will, however, likely be reduced as additional administrative claims accumulate based on the ongoing legal dispute over New Lake's Claim. In any event, whether New Lake claims $1.3 million under the settlement agreement or $2.5 million if it succeeds in overturning the CTO, Debtors' other creditors will essentially receive nothing.

While potential distributions to Debtors' other creditors seemingly weighs against settlement and continued defense of the CTO, it must be noted that none of Debtors' numerous creditors other than Hamon filed an objection to the Settlement Motion. Two other creditors did testify against the settlement at the Bankruptcy Court hearing but their objections, like Hamon's in large part, were predicated on understandable anger at Freedman's past conduct as opposed to the best administration of Debtor's estates. Morever, the prospect of a small distribution to non-objecting creditors does not by itself cause the Trustee's settlement of the New Lake Claim to fall below the lowest point in the range of reasonableness.

After consideration of the relevant factors then, I conclude that the Bankruptcy Court did not err in approving the Trustees' settlement with New Lake.

18

## V. Conclusion

IT IS THEREFORE ORDERED that

1. The United States Bankruptcy Court for the District of Colorado's Order Allowing Settlement Hearing to Proceed dated March 26, 2018 is AFFIRMED; and

2. The United States Bankruptcy Court for the District of Colorado's Order Approving Settlement Agreement dated October 26, 2018 is AFFIRMED.


Dated: August 21, 2019 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE